# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY YOUNG,<br><br>                Plaintiff,<br><br>v.<br><br>PENNSYLVANIA HUMAN RELATIONS<br>COMMISSION, et al.,<br><br>                Defendants. | Civil Action No. 07-3575 |

**MEMORANDUM & ORDER**

Before the court is defendant Joanne Schmidt's motion for summary judgment, dkt. 37, and plaintiff Barry Young's response thereto, dkt. 38. Young, who is African American, was previously employed by the Philadelphia School District ("School District" or "District"), where he was represented by the Firemen and Oilers Union Local # 1201 ("the Union"). After resigning from the School District, Young filed a complaint against the Union with the Pennsylvania Human Relations Commission (PHRC),[1] alleging that the Union discriminated against him on the basis of race. Defendant Joanne Schmidt, who was a caseworker for the PHRC, was responsible for investigating Young's complaint. She concluded that there was no probable cause to believe the Union had discriminated against Young.

Young then filed a civil action, in this court, against Schmidt and others associated with

---

[1] The PHRC is the state agency charged with enforcing Pennsylvania's anti-discrimination laws.

the PHRC, alleging discrimination and bias. This court construes Young's allegations against Schmidt as claims, under 42 U.S.C. § 1983, that Schmidt, in her personal capacity, violated Young's (a) equal protection and (b) due process rights under the Fourteenth Amendment. Because no genuine issue of material fact is in dispute, summary judgment is granted as to both claims.

I.

A.

Young's difficulties with the Union and the School District revolve around Young's purported violation of the School District's substance abuse policies.[2] Under those policies, employees such as Young may be terminated on the basis of three drug violations. Dkt. 37-3 (Findings of the Investigation) at 5–6. A violation includes a failed drug test. It also includes a "self-referral," which arises when an employee has been subjected to a drug test but, before the results are reported, the employee voluntarily identifies him or herself as needing assistance with alcohol or drug dependency. *Id.*

In this case, Young tested positive for cocaine on or around October 17, 2005 and was scheduled for a disciplinary hearing on October 25, 2005. *Id.* at 7. Prior to the hearing, Young met with his Union representative, Ron Ellis. *Id.* at 4–5; dkt. 37-2 (Young Deposition) at 27–31. Ellis advised Young that, because Young had two prior self-referrals, in addition to the recent positive drug test, the District would have grounds to discharge him. Ellis accordingly recommended that, rather than challenge the imminent discharge, Young should sign a

---

[2] Neither party has submitted a copy of the District and/or the Union's policies on these matters, and thus the above description is based primarily on Schmidt's "Findings of the Investigation" report and on Young' deposition transcript.

resignation agreement which would guarantee him a neutral employment reference from the district as well as payment for his accumulated annual and sick leave. Young followed Ellis's advice and signed the resignation agreement.

Young then filed a complaint against the Union with the PHRC, alleging that Ellis misled and coerced him into signing the resignation agreement, and further alleging that Ellis's conduct amounted to discrimination on the basis of Young's race. Dkt. 37-3 (Findings of the Investigation). Young asserted (and continues to assert) that Ellis should not have advised him to resign because, Young contends, he was not in violation of the three-strikes policy. Specifically, Young appears to concede that he sought assistance on two occasions prior to the positive drug test, but he asserts that these were not actionable self-referrals because, at the time he sought assistance, there was no pending drug test.

After conducting an investigation into Young's claims, Schmidt concluded that Ellis and the Union had a legitimate, non-discriminatory basis for advising him to sign the resignation agreement. Dkt. 37-3 (Findings of the Investigation). Schmidt noted that Young had entered drug rehabilitation on two occasions prior to his positive drug test, and that the second occasion was associated with a March 16, 2004 "Notice of Self-Referral" form that was signed by Young. She also noted that the School District considered his first instance of rehabilitation to be an actionable self-referral. Schmidt's recommendation was adopted after supervisory review, and that determination was affirmed pursuant to PHRC appellate review procedures.

**B.**

Young then filed a civil complaint in this court against the PHRC, which was dismissed pursuant to Eleventh Amendment immunity. Dkt. 7. In his amended complaint, Young named

3

then–Attorney General Thomas Corbett Jr. and several employees and officials of the PHRC, including Schmidt. Dkt. 11. In ruling on a second motion to dismiss, the court found that Young had failed to allege personal involvement by any of the named defendants, with the exception of Schmidt. Dkt. 19. The amended complaint was accordingly dismissed with respect to all defendants except Schmidt.

Young presents two claims against Schmidt: 1) that she discriminated against him on the basis of race, in violation of the equal protection clause of the Fourteenth Amendment; and 2) that she violated his right to due process because she was biased in favor of her former employer, the Philadelphia School District. Pending before the court is Young's motion for summary judgment.

## II.

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In deciding a motion for summary judgment, this court will view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.

To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection based on race, a plaintiff must prove the existence of purposeful discrimination. *Andrews v. Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). The plaintiff must also demonstrate that he received "different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980).

In support of her motion for summary judgment, Schmidt has submitted, *inter alia*, her own declaration, her "Findings of the Investigation,"[3] and Young's deposition transcript. Schmidt asserts that nothing in the record supports Young's claim of purposeful discrimination, and that there is no evidence of disparate treatment of those similarly situated. The court agrees.

At Young's deposition, when asked why he felt Schmidt discriminated against him because of his race, Young only stated that he believed that her investigation and recommendation were incorrect. Dkt. 37-2 (Young Deposition) at 49–50; 82–83.[4] It does appear that Young may have a plausible argument that at least one of his first two episodes of rehabilitation did not qualify as a self-referral. But even assuming that the Union official, Ron Ellis, was wrong in advising Young that he would have no grounds for contesting his termination, and even assuming there was some evidence that Ellis's actions amounted to racial discrimination, there is no evidence that Schmidt—in her investigation of Young's claims against the Union—purposefully discriminated against Young on the basis of race. Moreover, the

---

[3] The "Findings of the Investigation" is Schmidt's formal report and recommendation in response to Young's PHRC complaint.

[4] For example, when asked "what's the basis for you making . . . these allegations [of racism and bias]?", Young responded "Because the report lied." Dkt. 37-2 (Young Deposition) at 82.

evidence shows that Schmidt did investigate Young's argument that his requests for assistance did not qualify as self-referrals. *See, e.g.*, Dkt. 37-4 (PHRC Case Management Chronology) at 5 ("R[espondent Union] said that Legal Counsel must answer my [Schmidt's] question on difference between self-referral and seeking assistance for an abuse problem. I'm interested in exactly how this distinction works in practice. Is it applied fairly?"). Nor is there evidence in the record that Young received different treatment than those similarly situated. Indeed, there is no evidence at all of Schmidt's investigations or recommendations regarding other complainants before the PHRC.[5] In sum, Schmidt has made a prima facie showing that there is no genuine issue of material fact as to Young's equal protection claim.

In his opposition,[6] Young appears to continue to assert that he did not self-refer in March of 2004. But as discussed above, this is simply an argument that Schmidt's investigation was incorrect or erroneous; the potential error does not, by itself, support Young's racial discrimination claim. Young also argues that one of Schmidt's colleagues at the PHRC, an African-American woman who was present at the Fact Finding Conference, "should be considered a witness and her testimony is crucial to this case." Dkt. 38 (Young Opposition). But Young does not state what information this witness could provide that would support his equal protection claim. Accordingly, Young has failed to "come forward with 'specific facts showing

---

[5] There is some discussion of John Lacovara and Richard Caroselli, who were also Union members and who, Young alleges, had analogous drug violations. *See, e.g.*, dkt. 37-2 (Young Deposition) at 76–78; dkt. 37-3 (Findings of the Investigation) at 7–8. But there is no evidence that Lacovara or Caroselli filed complaints with the PHRC, and thus their cases are not relevant to Young's claims against Schmidt.

[6] Young has attached three documents to his opposition: 1) what appears to be a pay stub; 2) Young's interrogatories and Schmidt's answers to those interrogatories; and 3) the same Case Management System Chronology submitted by Schmidt.

that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. Rule Civ. Proc. 56(e)) (emphasis removed); *see also id.* at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Finally, the court has conducted an independent review of the record in this case, and has confirmed that there is no genuine issue of material fact as to Young's equal protection claim. Accordingly, Schmidt's motion for summary judgment as to that claim will be granted.

## IV.

Young also alleges that Schmidt's investigation was tainted because of her bias in favor the School District, where she was formerly employed. The court construes this as a claim that Schmidt violated Young's right to procedural due process. "[T]o sustain a § 1983 claim based upon a violation of procedural due process [a plaintiff] must, at a minimum, prove recklessness or 'gross negligence' . . . ." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1277 (3d Cir. 1994) (quoting *Daniels v. Williams*, 474 U.S. 327, 333–34 (1986)).

Schmidt's primary argument in favor of summary judgment on this claim is that, though she was indeed employed by the School District as a "Federal Program Liaison," her departure from the District was not amicable. She states, in this regard, that she filed suit against the School District for wrongful termination. *See* Dkt. 37 (Schmidt Declaration) at ¶ 8. And Schmidt notes that even if she did have a loyalty to the District, the complaint before her was between Young and the Union, not between Young and the District.

Schmidt's evidence establishes a prima facie showing that there is no genuine issue of material fact as to Young's due process claim, and Young has failed to rebut this showing. As

7

noted above, his only argument in opposition is that Schmidt's investigation and recommendation were erroneous; he offers no argument or evidence to support his claim that Schmidt was biased in favor of either the Union or the School District. Finally, the court has conducted an independent review of the record in this case, and has determined that there is no genuine issue of material fact as to Young's due process claim. Accordingly, Schmidt's motion for summary judgment as to that claim will be granted.

V.

In his opposition to the summary judgment motion, Young asks the court to reconsider the prior order dismissing Young's claims against then–Attorney General Corbett and against PHRC employees Wynn, Floyd, Mondesire, Neal, and White-Davis. The court dismissed the claims against those defendants because Young had failed to allege any personal involvement in the alleged wrongdoing. *See* Dkt. 19.

As to defendant Corbett, Young appears to contend that the fact that Corbett's office represented PHRC is sufficient to demonstrate personal involvement. But participation in litigation over an alleged civil rights claim is of course distinct from involvement in the alleged wrongdoing itself. Young has failed to demonstrate that Corbett or his office were personally involved in the wrongdoing, and the prior dismissal was proper for the reasons stated in the court's earlier order.

As to the other PHRC defendants, though it may be true that "they were all contacted prior to, and after [Schmidt's] dismissal of [Young's] complaint," mere contact with Schmidt would be insufficient to impose liability, and thus the dismissal of the claims against those defendants was also proper for the reasons stated in the court's earlier order.

8

* * * *

**AND NOW**, this 31st day of March, 2011, **IT IS ORDERED** that defendant's motion for summary judgment, *see* dkt. 37, is hereby **GRANTED**, and that plaintiff's motion for reconsideration, see dkt. 38, is hereby **DENIED**. The Clerk of Court is directed to close this case statistically.

      /s/ Louis H. Pollak
          Pollak, J.